UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GWENYTH D. FORBES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:11-CV-409 |
| | § | |
| CITIMORTGAGE, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced foreclosure action are four motions: (i) the Motion for Summary Judgment (Doc. 39) filed by Defendant CitiMortgage, Inc. ("CitiMortgage"); (ii) the Motion to Dismiss (Doc. 40) filed by Plaintiff Gwenyth D. Forbes ("Forbes"); (iii) the Motion to Strike Evidence (Doc. 47) filed by CitiMortgage; and the Motion for Leave to File Supplement Summary Judgment Evidence (Doc. 48), also filed by CitiMortgage.[1]

Having considered the pleadings, the factual and procedural history of this dispute, and the applicable law, the Court concludes that (i) the motion to dismiss should be denied; (ii) the motion to strike evidence should be granted; (iii) the motion to supplement summary judgment evidence should be granted; and (iv) the motion for summary judgment should be granted in part and denied in part.

---

[1] Responsive pleadings include the following:
- CitiMortgage's Response to Forbes's Motion to Dismiss (Doc. 41)
- Forbes's Response to CitiMortgage's Motion for Summary Judgment (Doc. 45)
- CitiMortgage's Reply in Support of Its Motion for Summary Judgment (Doc. 47)

I.      **Factual Background**

In March 2006, Forbes executed a Texas Home Equity Note (the "Note") to obtain a home equity loan in the amount of $320,000 from ABN AMRO Mortgage Group, Inc. ("ABN AMRO").  Note, Doc. 39, Ex. A-1.  Forbes secured payment of the Note by executing a Texas Home Equity Security Instrument (the "Security Instrument") securing to ABN AMRO her rights in the real property located at 8128 Tri City Beach Rd., Baytown, Texas 77520 (the "Property").  Security Instrument, Doc. 39, Ex. A-2.  Simultaneously with the execution of the Note, the parties entered into an Escrow Waiver Agreement (the "Escrow Waiver"), whereby Forbes paid $800.00 as consideration for ABN AMRO waiving its requirement that her monthly loan payments be deposited into an escrow account.  Escrow Waiver, Doc. 39, Ex. A-3.  Under the terms of the Escrow Waiver, Forbes agreed to be "solely responsible" for the direct and timely payment of any and all "Escrow Items" affecting the Property, including, property taxes and insurance.  *Id.*  In the event that Forbes failed to timely pay any Escrow Items or that it became necessary for ABN AMRO to advance funds to pay all or any portion of the Escrow Items, ABN AMRO retained its rights under the Escrow Waiver to enforce the requirement of an escrow account.  *Id.*  In addition to the rights provided to ABN AMRO under the Escrow Waiver, the Security Instrument provided:

> "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke as to any or all Escrow Items…"

Security Instrument at ¶ 3.

On February 2, 2007, Forbes paid her 2006 property taxes to Chambers County in the amount of $1,834.89.  02/02/07 Tax Receipt, Doc. 39, Ex. B-1.  Forbes received a receipt from

the Chambers County Tax Authority showing a zero balance; however, for reasons that are not clear from the record, additional amounts were owed for the 2006 tax year amounting to $307.95. *Id.*;Aff. of Chambers County Tax Office at ¶ 6, Doc. 39, Ex. B. This amount remained unpaid and incurred additional fees and penalties, bringing the total amount owed to $443.44. *Id.* On August 30, 2007, ABN AMRO established an escrow on Forbes's account and on September 6, 2007, ABN AMRO advanced the full amount of the delinquent taxes to the Chambers County Tax Authority. *Id.* On September 11, 2007, ABN AMRO sent Forbes an Escrow Account Disclosure Statement, which informed Forbes that an escrow account had been established on her account with a balance of -$443.42. 09/11/07 Escrow Account Disclosure Statement, Doc. 39, Ex. A-6. The notice did not provide any details regarding the reason that the escrow account was established, but it did notify Forbes of the payment necessary to correct the shortage, and also provided an alternative schedule of the modified monthly payments necessary to maintain enough money in her account fulfill her obligations going forward. *Id.*

On September 15, 2007, CitiMortgage assumed responsibilities for servicing Forbes's loan. 08/22/07 Letter, Doc. 39, Ex. A-7. Beginning in October 2007, Forbes's monthly account statements included a monthly escrow payment in addition to her usual principal and interest payment. 10/12/07 Mortgage Account Statement, Doc. 39, Ex. A-8. Despite her receipt of these statements, Forbes continued to make her monthly payments of principal and interest only in the amount of $1,944.35. *See* Loan Ledger at p. 1, Doc. 48, Ex. E-11. In November 2007, Forbes began incurring late fees as a result of her monthly payments being held in the escrow account. *Id.*; Nov. – Dec. Mortgage Account Statements, Doc. 39, Ex. A-8. Having revoked the Escrow Waiver, CitiMortgage paid Forbes's property taxes for tax years 2007 and 2008. Aff. of Chambers County Tax Office at ¶ 6; 01/09/08 Tax Receipt, Doc. 39, Ex. B-3; 01/07/09 Tax

Receipt, Doc. 39, Ex. B-4; Aff. of Barbers Hill Independent School District Tax Office at ¶ 6, Doc. 39, Ex. C; 10/03/07 Tax Statement, Doc. 39, Ex. C-1; 10/17/08 Tax Statement, Doc. 30, Ex. B-3. CitiMortgage added the amount of these tax payments to Forbes's escrow account balance. *See* Loan Ledger at 1–2. Forbes continued to make her monthly payments of $1,944.35 without regard for the increasing escrow balance. *See* Loan Ledger at p. 1–2.

On February 26, 2009, CitiMortgage sent Forbes a letter explaining the circumstances existing with respect to the escrow account (the "Letter"). 02/26/09 Letter, Doc. 48, Ex. E-12. The Letter explained that the escrow account was opened in order to satisfy past due taxes owed to Chambers County for the 2006 tax year, and that thereafter, CitiMortgage continued to pay Forbes's property taxes. *Id.* The letter goes on to state:

> "As an originally non escrowed account, the escrow account can be deleted once the escrow balance is brought to a zero or positive amount. Although your payment had increased to due to [*sic*] addition of escrow, you continued to send the principal and interest payment of $1,944.35. This caused your payments to be short, and your account to become delinquent. When escrow funds were received, the application to escrow was not specified. Therefore, the funds were applied to past due payments.
>
> Funds have now been received which brought your escrow balance to $0.00. We have complied with you request to discontinue the escrow on your loan. Your new monthly payment, effective January 2009 is $1,944.35. You will receive an Escrow Account Disclosure Statement separately.
>
> We have confirmed with Chambers County and Barbers Hill ISD that your taxes are paid current, and there has not been an overpayment. Your next real estate tax bill is due in January 2011. It is now your sole responsibility to ensure timely payment of your homeowners insurance and property taxes. Should you fail to make payments prior to the delinquency date or expiration date, CitiMortgage reserves the right to pay these past due amounts, and reestablish the escrow account."

In conjunction with the mailing of the Letter, Forbes's escrow account balance was brought to zero. *See* Loan Ledger at p. 2; Supp. Aff. of CitiMortgage, Inc. at ¶ 5, Doc. 48, Ex. E.

According to an affidavit submitted by CitiMortgage, the Letter was written in reliance on Plaintiff's representations that she had also paid her 2008 property taxes and in anticipation that CitiMortgage would receive a full refund of its duplicate payment. *Id.* at ¶ 5. Shortly after the Letter was sent, on March 2, 2009, CitiMortgage reversed the applications of Forbes's payments to escrow and re-applied them to her principal balance and interest. *See* Loan Ledger at p. 2–3; Supp. Aff. of CitiMortgage, Inc. at ¶ 9, Doc. 48, Ex. E. This created a negative escrow balance, which CitiMortgage expected would be resolved upon receipt of the refund. *Id.* Because CitiMortgage did not receive a refund from the taxing authorities or a reimbursement from Forbes, the negative escrow balance was never made current. *Id.* at ¶ 11–12; *see* Loan Ledger at p. 2–3.

On April 27, 2009, CitiMortgage sent Forbes another Escrow Account Disclosure Statement detailing her repayment plan. 4/27/2009 Escrow Account Disclosure Statement, Doc. 48, Ex. E-13. Unlike the first Escrow Account Disclosure Statement, this statement explained that CitiMortgage advanced funds to pay delinquent taxes on Forbes's behalf. Additionally, it states on page one, "Please note that we are using this statement solely as the method for billing and collecting the delinquent advance; *we have not established an escrow on your account.*" Page two goes on to provide a statement of "actual activity" in Forbes's escrow account from February 26, 2009 through April 27, 2009 and reflected a balance of -$4,719.33.

Forbes paid her 2009 and 2010 property taxes herself. 12/23/09 Tax Receipt, Doc. 48, Ex. D at 16; 01/31/11 Tax Receipt, Doc. 48, Ex. D at 17. She did not abide by the repayment plan and continued to make monthly payments in the amount of $1,944.35. Loan Ledger at p. 3–5. CitiMortgage provided multiple notices to Forbes that her loan was in default, the last of which was sent on or around April 11, 2011. Aff. of CitiMortgage, Inc. at ¶ 14–16, Doc. 39, Ex.

A.  Forbes received notice that failure to cure the default by May, 12, 2011 would result in acceleration of her loan.  04/11/11 Default Notice, Doc. 39, Ex. A.-9.  Forbes failed to cure the default and on May 20, 2011, CitiMortgage elected to accelerate the maturity of her loan.  Acceleration Notice, Doc. 39, Ex. A-10.  Forbes sent her last monthly payment in June 2011, which CitiMortgage returned as insufficient to cure her default.  Loan Ledger at 5; Aff. of CitiMortgage, Inc. at ¶ 18.  As of May 31, 2013, the accelerated amount due is $343,534.85.  Doc. 39, Ex. A at ¶ 19.  CitiMortgage has not yet foreclosed and Forbes still occupies the Property.  *Id.* at ¶ 20.

## II.   Procedural History

On September 2, 2011, Forbes filed her Original Petition in state court, alleging breach of contract, unjust enrichment, violations of the Texas Debt Collection and Deceptive Trade Practices Acts, and unreasonable collection efforts.  Original Pet. at ¶ 13–16, Doc. 1-5.  CitiMortgage subsequently removed the action to the Galveston Division of the United States District Court for the Southern District of Texas (Notice of Removal, Doc. 1).  The case was later transferred to this Court where a lengthy discovery dispute ensued.  On April 10, 2013, CitiMortgage filed a motion to compel (Doc. 31), complaining that Forbes failed to produce her initial disclosures, failed to respond to certain interrogatories, and failed to provide all documents responsive to certain requests for production.  Forbes did not file a response.  *See* Not. Of Pl.'s Non-Filing of a Resp. to Mot. to Compel Disc., Doc. 34.  On May 14, 2013, Magistrate Judge Stacy issued an Order (Doc. 35) granting Defendant's motion to compel Forbes to (1) provide complete initial disclosures; (2) serve complete answers to the interrogatories at issue; and (3) produce all documents responsive to the requests for production at issue.  Forbes failed to abide by the May 14 Order and also failed to appear for a properly noticed deposition on June 7, 2013.

On June 12, 2013, CitiMortgage filed a motion for sanctions (Doc. 36). Forbes filed a response in which she claimed that she had timely served her initial disclosures and produced all responsive documents. Pl.'s Resp. to Def.'s Mot. for Sanctions at p. 1, 3. She further claimed that her counsel never received Defendant's deposition notice, and that she was willing to be deposed. *Id.* at 1. On July 9, 2013, Judge Stacy granted CitiMortgage's motion for sanctions in part. July 9 Order, Doc. 46. Judge Stacy found that Forbes had not taken her discovery obligations seriously and issued an Order prohibiting Forbes from supporting her claims with any undisclosed facts, documents, or evidence. *Id.* at 3–4. Additionally, Forbes was ordered to pay CitiMortgage for the reasonable attorney fees and costs incurred in filing its motion for discovery sanctions and motion to compel. *Id.*

On June 19, 2013, prior to the issuance of Judge Stacy's order granting Defendant's motion to for sanctions, CitiMortgage filed the instant motion for summary judgment (Doc. 39). Within minutes, Forbes filed her motion to dismiss the entire action without prejudice (Doc. 40). CitiMortgage filed a response in opposition to Forbes's motion to dismiss (Doc. 41), and Forbes filed a response in opposition to CitiMortgage's motion for summary judgment (Doc. 45). Attached to Forbes's response were 18 exhibits, many of which CitiMortgage contends are in violation of the July 9 Order prohibiting Forbes from supporting her claims with undisclosed facts or evidence. CitiMortgage moved to strike any undisclosed evidence in Forbes's response and subsequently filed a motion for leave to supplement summary judgment evidence (Doc. 48) with some, but not all, of the same documents that Forbes offered in her reply to CitiMortgage's motion for summary judgment. All four motions are now ripe for adjudication.

**III.     Motion to Dismiss**

Where an opposing party has already served an answer or motion for summary judgment, a plaintiff's voluntary dismissal of an action can be effected only by court order. FED. R. CIV. P. 41(a)(2). The general rule guiding a court's decision is that "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002). "Plain legal prejudice may occur when the plaintiff moves to dismiss a suit at a late stage of the proceedings or seeks to avoid an imminent adverse ruling in the case, or where a subsequent refiling of the suit would deprive the defendant of a limitations defense." *Harris v. Devon Energy Prod. Co. L.P.*, 500 Fed. Appx. 267, 268 (5th Cir. 2012). A court may refuse to grant a voluntary dismissal where a plaintiff "fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort." *Id.*; *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).

Forbes filed her motion to dismiss this action without prejudice nearly two years after the action was removed to federal court. Forbes did not provide any reason for her motion, nor did she file a reply to CitiMortgage's response in opposition to her motion. The timing of Forbes's motion, however—after CitiMortgage filed its motions for discovery sanctions and for summary judgment—provides insight into her reasons. The circumstances indicate that Forbes's motion is a plain attempt to avoid the consequences of her failure to participate in discovery and to avoid an adverse ruling in her case. CitiMortgage contends that it will be prejudiced if Forbes's motion is granted and opposes dismissal. At the present stage of the litigation, CitiMortgage has answered the complaint, the parties have participated in scheduling conferences, the parties engaged in mediation, discovery is now complete, and Defendant has briefed and filed a motion

for summary judgment. Based on the factual and procedural history of this case, the Court finds that Defendant will suffer plain legal prejudice if Plaintiff's case is dismissed at this late stage and Plaintiff is given another opportunity to bring her claims without facing the consequences of her actions in this case. Therefore, Plaintiff's motion to dismiss is denied.

## IV. Motion to Strike and Motion to Supplement Summary Judgment Evidence

On July 9, 2013, Magistrate Judge Stacy granted in part CitiMortgage's motion for discovery sanctions on the basis that Forbes failed to comply with the Court's May 14 Order. Doc. 46. The May 14 Order warned Forbes in clear terms that her failure to comply "could result in the exclusion of evidence not otherwise produced or disclosed, in the dismissal of Plaintiff's claims, and/or in the entry of an order for attorney's fees and sanctions in favor of Defendant CitiMortgage, Inc." Forbes failed to comply. The July 9 Order prohibits Forbes "from supporting her claims with any undisclosed facts, documents or evidence." Doc. 46 at 4. In contravention of this Order, Forbes attached numerous undisclosed exhibits to her response to CitiMortgage's motion for summary judgment. *See* Doc. 45. CitiMortgage moves to strike a number of these exhibits on grounds that they are in violation of the July 9 Order. No response to the motion has been filed; thus, under Local Rule 7.4, it is deemed unopposed. The Court finds that the undisclosed evidence attached to Forbes's response to CitiMortgage's motion for summary judgment is in violation of the July 9 Order and grants Defendant's motion to strike it from the record.[2]

In addition to its motion to strike, Defendant filed a motion for leave to supplement summary judgment evidence (Doc. 48) with a number of exhibits, three of which were attached to Forbes's response to CitiMortgage's motion for summary judgment. Forbes has not

---

[2] The following evidence is stricken from the record pursuant to the Court's July 9 Order: Doc. 45, Ex. A ¶¶ 4 (first sentence only), 5 (last sentence only), 6 (last sentence only), 7, 8, 9, 10, 11, 12, 13, 14, Ex. A.8, Ex. A.9, Ex. A.10, Ex. A.11, Ex. A.12, Ex. B.

responded to CitiMortgage's motion, therefore it is also deemed unopposed under Local Rule 7.4. CitiMortgage offers this additional evidence "for the limited purpose of addressing those issue raised for the first time in Plaintiff's Response and to rebut those issues…" Doc. 48 at 2. The evidence offered by CitiMortgage includes Plaintiff's responses to Defendant's first set of interrogatories, Plaintiff's Responses to Defendant's request for production of documents, Tax Receipts for Chambers County for years 2006, 2009, 2010, Tax Receipts for Barbers Hill Independent School District for years 2006 and 2007, a payment history of the Loan for dates 01/09/07 through 03/02/2009, Plaintiff's retainer agreement and proof of retainer, a supplemental affidavit of CitiMortgage, a clearer copy of the loan ledger previously admitted as Doc. 39, Ex. A-5, the February 26, 2009 letter, and an escrow disclosure statement dated April 27, 2009. In order that the Court may reach a full and final resolution of this matter, Defendant's motion for leave to supplement summary judgment evidence is granted.

## V.     Motion for Summary Judgment

### A.     Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of "material" fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact;

the movant may, but is not required to, negate elements of the nonmovant's case to prevail on summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 431 (5th Cir. 1998). If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *Nat'l Ass'n of Gov't Empl. v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause of action(s). *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). Conclusory allegations unsupported by evidence will not preclude summary judgment. *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ....'" *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson*, 477 U.S. at 247–48. "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd. .,* 174 F.3d 636, 644 (5th Cir.

1999). Finally, when evidence exists in the summary judgment record but the movant fails to cite it in the response to the motion for summary judgment, that evidence is not properly before the court. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

### B. Discussion

CitiMortgage seeks summary judgment on each of Forbes's claims for breach of contract, violations of the Texas Debt Collection and Deceptive Trade Practices Acts, unreasonable collection efforts and unjust enrichment. Each argument is analyzed in turn.

#### 1. Breach of Contract

In order to prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the Defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l., Inc. v. Eagle Group, LLC*, 490 F.3d 380, 386 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Here, the relevant contracts are the Escrow Waiver Agreement and the Security Instrument. CitiMortgage argues that it is entitled to summary judgment on Forbes's claim for breach of contract because 1) Forbes has no evidence to support the elements of her claim; 2) the evidence establishes that it was Forbes who breached the Escrow Waiver, not CitiMortgage; and 3) Forbes has not suffered any damages as a result of any breach of the Escrow Waiver. Doc. 39 at 7–11. In order to survive summary judgment on this claim, Forbes must produce evidence, or evidence of a factual dispute, for each element of her claim.

The Escrow Waiver holds Forbes responsible for the "direct and timely payment" of all property taxes. *See* Escrow Waiver. Pursuant to the Texas Property Tax Code, "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1." TEX. PROP. TAX CODE § 31.02. The undisputed evidence shows that Forbes paid her 2006 property taxes on February 2, 2007, one day past the deadline. 02/02/07 Tax Receipt. As a result, Forbes did not timely pay her property taxes and therefore did not perform her obligation under the Escrow Waiver. The Escrow Waiver is clear that the Lender retains its right to enforce the requirement of an escrow account if . . . [the] Borrower fail(s) to pay any of the Escrow Items in a prompt and timely manner . . ." Escrow Waiver. The Security Instrument also reserves CitiMortgage's right to revoke the Escrow Waiver in the event that Forbes fails to pay any escrow item. Security Instrument at ¶ 3. Once Forbes breached the Escrow Waiver by failing to timely pay her 2006 property taxes, CitiMortgage was relieved from performing under the Escrow Waiver, and was entitled to revoke the Waiver preemptively and pay Forbes's 2007 and 2008 property taxes.

Forbes alleges that CitiMortgage breached the Escrow Waiver by wrongfully placing an escrow requirement on her loan and then misapplying her monthly payments to the escrow account instead of to her principal balance and interest. Doc. 1-5 at ¶¶ 13–14. In both her complaint and her response, Forbes claims that she performed under the Escrow Waiver by paying all of her property taxes; however, she does not offer any evidence to support this statement. The only receipts that Forbes offers as proof of her alleged tax payments indicate that CitiMortgage paid the tax delinquency in 2006, and all of the 2007 and 2008 property taxes. Doc. 45 at 6. Forbes also attempts to rely on the February 26, 2009 Letter, wherein CitiMortgage states, "we have confirmed with Chambers County and Barbers Hill ISD that your taxes are paid current and there has not been an overpayment," as proof that Forbes paid her

property taxes. However, the letter does not provide evidence that it was Forbes who paid her 2008 property taxes. The only evidence in the record reflects that CitiMortgage paid the 2008 property taxes. Forbes has not submitted any competent summary judgment evidence to show that she performed under the Escrow Waiver by timely submitting all payments of her taxes. Viewing the evidence in a light most favorable to Forbes, Forbes failed to raise an issue of fact as to whether she performed under the Escrow Waiver. Accordingly, CitiMortgage is entitled to summary judgment on Forbes's claim for breach of contract.

> 2. *Texas Debt Collection, Texas Deceptive Trade Practices Acts, Unreasonable Collection Efforts*

Forbes alleges that CitiMortgage violated § 392.304(a)(8) of the Texas Debt Collection Act ("TDCA"), the Texas Deceptive Trade Practices Act ("DTPA"), and the common law tort of unreasonable collection efforts by "misrepresenting the nature, extent, or amount of her debt." Doc. 1-5 ¶ 16.

The TDCA regulates the collection of "consumer debts" and prohibits debt collectors from, among other things, using "fraudulent, deceptive, or misleading representation[s]." TEX. FIN. CODE §§ 392.001, 392.304(a). For a statement to constitute a misrepresentation under the TDCA, the debt collector must have made an affirmative statement that was false or misleading. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010).

CitiMortgage argues that it is entitled to summary judgment on Forbes's TDCA claim because 1) it is duplicative of her breach of contract claim; 2) Forbes has no evidence to support her TDCA claim; and 3) the evidence establishes that Defendant has not committed any wrongdoing in connection with the waiver. Doc. 39 at 7–11. Forbes refutes Defendant's argument that her TDCA claim is duplicative of the breach of contract claim by explaining that her breach of contract claim is based on Defendant's conduct in unilaterally revoking the escrow

wavier without cause, while her TDCA claim is based on Defendant's conduct in misrepresenting the nature of her debt. Doc. 45 at 11. The Court finds that claims are not duplicative.

In support of her claim, Forbes points specifically to the February 26, 2009 Letter as an example of a false or misleading assertion. Doc. 45 at 13. Defendant argues that this Letter was made in reliance on Forbes's representations that she had paid her 2008 taxes and the expectation that CitiMortgage would receive a reimbursement. Doc. 47 at 9. CitiMortgage claims that it requested a refund from the taxing authorities but was informed that it was their policy to refund only a later-received check in instances of double-payment. *Id.* CitiMortgage has not submitted any evidence of the facts supporting this explanation other than its own self-serving affidavit. Supp. Aff. of CitiMortgage, Inc. ¶ 6–12. The Court finds that this Letter, combined with the initial Escrow Account Disclosure Statement to Forbes, which never disclosed the $443.44 tax deficiency in 2006 as the reason for revocation of the escrow waiver, and the April 27, 2009 Escrow Account Disclosure Statement, which stated, "*we have not established an escrow on your account*," constitute affirmative statements that could have been misleading, and raise sufficient issues of fact to preclude summary judgment for CitiMortgage on Forbes's claim for violation of the TDCA.

The DTPA is intended to protect consumers from, among other things, "false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." TEX. BUS. & COM. CODE § 17.44(a). In order to prove an entitlement to relief under the DTPA, a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM.

CODE § 17.50(a)(1)). To qualify as a consumer under the DTPA, the plaintiff must (1) "seek or acquire goods or services by purchase or lease" and (2) "the good or services purchased or leased must form the basis of the complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W. 147, 159 (Tex. app.—Fort Worth 2007, pet. denied). "Goods" are defined as "tangible chattels or real property purchased or leased for use." TEX. BUS. & COM. CODE §17.45(1). "Services" are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* § 17. 45(2). "[T]he key principle in determining consumer status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it." *First State Bank v. Keilman,* 851 S.W.2d 914, 929 (Tex. App.—Austin 1993, writ denied). Usually a loan transaction cannot be challenged under the DTPA because the lending of money is not a "good" or "service" for purposes of consumer status. *See Miller v. BAC Home Loans Servicing*, 726 F.2d 717, 725 (5th Cir. 2013). However, where the mortgagor's primary objective was to acquire a good or service, and that good or service forms the basis of the complaint, the mortgagor qualifies as a consumer under the DTPA. *Id.*

Here it is undisputed that Forbes's obtained a home equity loan solely to acquire money. Forbes argues that she qualifies as a consumer based on her purchase of the escrow waiver, which "was not an incidental service provided by the lender in the service of a loan." Doc. 45 at 17. The Court is not persuaded. The waiver of a requirement to place monthly loan payments into an escrow account is inherently incidental to the servicing of the loan. *See O'Dea v. Wells Fargo Home Mortg.*, No. H-10-4755, 2013 WL 441461, at *10 (S.D. Tex. 2013 Feb. 5, 2013) (finding the purchase of an escrow waiver did not confer consumer status under the DTPA). Accordingly, Forbes cannot establish that she is a consumer under the DTPA and Defendants are entitled to summary judgment on Forbes's DTPA claim.

Although not clearly defined in Texas law, a claim for the intentional tort of unreasonable collection efforts has been delineated as "efforts that amount to a course of harassment that was willful, wanton, malicious and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). Generally, Texas courts apply this cause of action based actual collection efforts, such as repeated telephone calls or physically approaching the debtor, that overstep the bounds of routine collection methods and rise to a level of excessive harassment. *Id.* at 864–65 (lender sent a "large, very intimidating man" who was "yelling and screaming, demanded the keys to the house, and told [plaintiffs'] family to get out").

Defendant argues that it is entitled to summary judgment on Forbes's claim because she has not alleged any "intentional course of harassment" and the "mere act of exercising a contractual right to foreclose does not qualify as the type of conduct that the tort of unreasonable collection efforts aims to prevent." Doc. 39 at 17–18. Forbes bases her claim for unreasonable collection efforts on the demand letters she received from CitiMortgage which threatened foreclosure on her home "despite Defendant's full knowledge that Plaintiff's loan was not in default, full knowledge that Plaintiff had made timely payments for over four years and full knowledge that Defendant breached the escrow waiver agreement." Doc. 45 at 21. Plaintiff's argument amounts to a claim that Defendant attempted to collect a debt it was not owed. Debt collection efforts are tortious when lenders attempt to collect debts they are not owed. *Narvaez*, 757 F. Supp. 2d at 635 (citing *EMC Mortg.,* 252 S.W.3d at 868–69; *Pullins v. Credit Exch. of Dallas., Inc.,* 538 S.W.2d 681, 682–83 (Tex. App.—Waco 1976, no writ)). Courts distinguish cases such as this, however, where the plaintiff still owes money to the lender, even where that amount is in dispute. *Id.* It is undisputed that Forbes was still indebted to CitiMortgage under the

Note. Further, Forbes has failed to allege any facts that CitiMortgage's actions amounted to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish. Accordingly, CitiMortgage is entitled to summary judgment on Forbes's claim for unreasonable collection efforts.

### 3. *Unjust Enrichment*

A plaintiff may recover under a theory of unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Forbes claims that CitiMortgage will be "unjustly enriched if allowed to retain all the monthly mortgage payments, without an accounting, and sell the Plaintiff's Real Property at foreclosure." Doc. 1-5 ¶ 15. Defendant argues that Forbes's claim for unjust enrichment should be dismissed because 1) Forbes has no evidence of any benefit obtained by CitiMortgage due to fraud, duress, or taking of undue advantage; and 2) the security agreement and Escrow waiver govern the parties' dispute and therefore preclude recovery based on a theory of unjust enrichment.

Forbes has not offered any evidence of fraud, duress or taking of undue advantage. Further, "there can be no recovery [on an unjust enrichment theory] when the same subject matter is covered by an express contract." *Baxter v. PNA Bank Nat'l Ass'n*, No. 12-51181, 2013 WL 5356984, at *2 (5th Cir. Sept. 26, 2013) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). Here, Forbes's mortgage is governed by the Security Instrument and the Escrow Waiver. With these express agreements in place, any recovery based on a theory of unjust enrichment fails as a matter of law. Accordingly, CitiMortgage is entitled to summary judgment on this claim.

**VI.     Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion to Dismiss (Doc. 40) is **DENIED**. If is further

**ORDERED** that Defendant's Motion to Strike Evidence (Doc. 47) is **GRANTED**. It is further

**ORDERED** that Defendant's Motion for Leave to File Supplement Summary Judgment Evidence (Doc. 48) is **GRANTED**. It is further

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's breach of contract, DTPA, unreasonable collection efforts, and unjust enrichment claims and **DENIED** as to Plaintiff's TDCA claim. The Court previously terminated all deadlines in this case pending the resolution of the motions addressed herein. In light of this Order and the claim still at issue, that Docket Call is **RESET** to April 25, 2014 at 1:30 p.m. The deadline for filing the Joint Pretrial Order is April 14, 2014, and the two-week trial term begins on April 28, 2014.

SIGNED at Houston, Texas, this 20th day of February, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE